USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
In Re : Ex parte Application of
financialright GmbH, Katharina Prinzessin zu
Hohenlohe, Hartmut Baumer and Walter Weiss,

                             Applicants,

                                                  17-mc-105 (DAB)
                                                  <u>MEMORANDUM & ORDER</u>

For an Order Pursuant to 28 U.S.C. § 1782
Granting Leave to Obtain Discovery from
Jones Day for Use in Foreign Proceedings.
------------------------------------------X
DEBORAH A. BATTS, United States District Judge, Part I.

     On April 3, 2017, financialright GmbH, Katharina Prinzessin zu Hohenlohe, Hartmut Baumer, and Walter Weiss (collectively, "Applicants") filed an Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Jones Day for Use in Foreign Proceedings in suits they plan to file against Volkswagen AG ("Volkswagen" or "VW") in Germany related to that company's well-known emissions scandal.[1] They seek a report and documents related to an investigation conducted by Jones Day for Volkswagen related to the emissions scandal. In response, Jones Day filed the instant Motion to Dismiss, which Applicants oppose. For the following reasons, the Court declines to grant the Application for an Order pursuant to 28 U.S.C. § 1782 at this time because the proposed subpoena is too broad,

---

[1] Russell Hotten, <u>Volkswagen: The Scandal Explained</u>, BBC News (Dec. 10, 2015), http://www.bbc.com/news/business-34324772.

but also DENIES Jones Day's Motion to Dismiss in its entirety. Applicants may submit a renewed Application pursuant to 28 U.S.C. § 1782 upon a narrowing of the document requests. See Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015).

I. BACKGROUND

Applicants are current or potential litigants seeking relief in German Courts in connection with Volkswagen's emissions scandal. (Rother Decl. ¶¶ 3-4.)[2] In short, Applicants and similarly situated litigants allege that they purchased vehicles equipped with "defeat devices," which altered the emissions readings from Volkswagen and Audi cars. (Id.) Here, they seek various documents related to Jones Day's investigation of the emissions scandal. (App. Ex. B.)[3]

Volkswagen retained multiple law firms in connection with the emissions scandal, including Jones Day. After VW received notice of investigations by the Environmental Protection Agency ("EPA") and Department of Justice ("DOJ") on September 18, 2015, Jones Day lawyers provided "legal advice as to the potential

---

[2] Applicants' suits are among many related to the scandal. Notably, in the United States, North District of California Judge Charles R. Breyer approved a record-setting civil settlement, and, in the Eastern District of Michigan, Volkswagen pleaded guilty to criminal charges.

[3] Applicants have previously tried, unsuccessfully, to obtain such documents from German authorities and from Volkswagen itself. (Rother Decl. ¶¶ 5-6.)

2

civil and criminal legal implications of these matters under U.S. law, including the risk of litigation" beginning on September 22, 2015 at Volkswagen headquarters in Wolfsburg, Germany. (Romatowski Decl. ¶¶ 3-4.) Jones Day says that its "extensive investigation of the facts . . . was necessary, foremost among several purposes, to enable [it] to give sound and informed legal advice to [Volkswagen]." (Id. ¶ 5.)

Pursuant to an agreement entitled "Agreement on the commissioning of legal services between [Volkswagen] and Jones Day," dated September 27, 2015, Volkswagen retained Jones Day. The agreement provides:

> The international law firm Jones Day is hereby instructed to advise in relation to certain issues in connection with the irregularities that have become known regarding diesel engines. Under supervision of and with ongoing information to the chairman of the supervisory board and its legal advisor, Jones Day shall particularly perform a clarification of the facts that underlie the irregularities. In this connection, Jones Day shall represent Volkswagen AG vis-á-vis U.S. authorities.

(Perlitt Supp. Decl. ¶ 4.)[4] It further states: "Powers of attorney that authorize Jones Day to represent Volkswagen AG vis-á-vis courts, public prosecutors, arbitration bodies or authorities, will be granted, if necessary, separately." (Id.)

---

[4] Applicants point to other references to fact investigations in support of their contention that Jones Day's investigation did not incorporate legal counsel. (See Applicants' Opp. Ex. B, at 12 ("Clarification of Facts"); Ex. C, at 1 ("clarify the facts and responsibilities").)

3

Jones Day conducted an extensive investigation of the issues, analyzing millions of documents and interviewing hundreds of VW employees. (Perlitt Decl. ¶ 5.) Jones Day attorneys "memorialized their thoughts and impressions of those documents and those interviews in innumerable internal memoranda." (Id.; see id. ¶ 9.) Applicants contend that Jones Day produced a report on its investigation for Volkswagen, but Jones Day says it has provided no such report to VW.[5] (Id. ¶ 8.)

One issue here is whether Volkswagen waived any privilege covering the documents in question. Jones Day says that it "has never submitted its interview notes to VW or to the DoJ, or shared the content with the public, and it has not even commented publicly on its representation of [Volkswagen]." (Perlitt Decl. ¶ 10.) In the course of cooperating with the DOJ criminal investigation, Jones Day entered into an agreement with the DOJ "to preserve VW's claims of attorney-client privilege and work product protection for information disclosed to DOJ in the course of that cooperation." (Romatowski Decl. ¶ 7.) The agreement states that "VW, through its counsel Jones Day, intends to provide DOJ oral briefings regarding its investigation, and may furnish additional documents or other

---

[5] Jones Day more than likely did "report" to VW, but it is unclear whether that report was reduced to writing and therefore a "document" capable of being produced in discovery.

information to DOJ in connection with such oral briefings." (Romatowski Decl. Ex. A, at 1.) The agreement further says that "to the extent any [privileged materials] are provided to DOJ pursuant to this agreement, VW does not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege." (Id.) Under the agreement, DOJ was to keep any privileged materials confidential "except to the extent that [it] determine[d] in its sole discretion that disclosure would be in furtherance of [its] discharge of its duties and responsibilities or is otherwise required by law." (Id. at 1-2.) Applicants point to a press release which states that the Volkswagen "Supervisory Board directed the law firm Jones Day to share all findings of its independent investigation of the diesel matter with the DOJ. The Statement of Facts draws upon Jones Day's extensive work, as well as on evidence developed by the DOJ." (Applicants' Opp. Ex. D, at 1-2.)[6]

In the instant Part I matter, Applicants filed an Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings on April 3, 2017. Specifically, Applicants seek a subpoena with four document requests to Jones Day:

---

[6] Jones Day also contends that it has not shared its work product with Deloitte. (Perlitt Supp. Decl. ¶ 6.)

5

1) "All Documents and Communications concerning [Jones Day's] external investigations of Volkswagen including but not limited to reports and drafts of report."

2) "All Documents that [Jones Day] received, found, or took from Volkswagen concerning [its] external investigation."

3) "All Documents [Jones Day] relied on in drafting [its] report of [its] external investigation of Volkswagen."

4) "All Documents and Communications that [Jones Day] created, wrote, drafted, recorded, or videotaped concerning [its] external investigation of Volkswagen."

Jones Day filed a Motion to Dismiss the Application on May 2, 2017, with an Opposition from Applicants, Reply from Jones Day, and Sur-Reply from Applicants following.[7]

II. Discussion

    A. Statutory Requirements under 17 U.S.C. § 1782

To prevail under 17 U.S.C. § 1782, Applicants must first satisfy three statutory requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign

---

[7] It is unclear to the Court why Jones Day filed a Motion to Dismiss rather than simply opposing the Application. Based on the Court's review of similar cases, the Court construes Jones Day's Motion to Dismiss as an Opposition to the Application.

tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" In re Application of Esses, 101 F.3d 873, 875 (2d Cir. 1996). The statute also contains a privilege exception, providing: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a).

Jones Day concedes that the first three statutory requirements are met: it resides or is found in New York, the documents in question would be used in the pending or potential German litigation, and the Applicants are interested persons. Jones Day argues, however, that the documents sought by Applicants are protected by the attorney-client and work-product privileges under United States law and attorney-client privilege under German law.

   B. Choice of Law Regarding Privilege

The parties discuss both United States federal common law and German law with respect to whether attorney-client privilege applies here. In determining what law to apply with respect to attorney-client privilege, this Court considers the country with which the allegedly privileged communications "touch base." Anwar v. Fairfield Greenwich Ltd., 982 F. Supp. 2d 260, 263-6 (S.D.N.Y. 2013). Using this test, the Court "appl[ies] the law

of the country that has the predominant or the most direct and compelling interest in whether [the] communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." Id. at 264 (quoting Astra Aktiebolag v. Andrx Pharms., Inc., 208 F.R.D. 92, 98 (S.D.N.Y. 2002)). "The jurisdiction with the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." Id. (quoting Astra Aktiebolag, 208 F.R.D. at 98). "Communications concerning legal proceedings in the United States or advice regarding United States law are typically governed by United States privilege law, while communications relating to foreign legal proceedings or foreign law are generally governed by foreign privilege law." Id.

In this case, the attorney-client relationship was entered into in Germany involving both American and German attorneys. Many of the relevant interviews were conducted in Germany and in German, and many documents allegedly in Jones Day's possession came from Germany. However, in addition to having a presence in Germany, Jones Day is principally an American law firm, and American lawyers are working on the Volkswagen case. While Jones Day's investigation pertains to the whole of the emissions scandal, including in Germany, it was retained specifically to

represent Volkswagen vis-à-vis American authorities. Furthermore, Jones Day has in fact represented Volkswagen before American authorities, specifically the Justice Department, in a proceeding involving U.S. law. Accordingly, the Court holds that United States law applies with respect to attorney-client privilege and the work-product doctrine as to this Application. See In re Berlamont, No. 14-MC-00190 (JSR), 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings, 773 F.3d 456 (2d Cir. 2014) (holding that U.S., not Swiss, privilege law applied where the documents in question were "located in New York, were created and produced in the context of a case pending in New York, and [were] being sought from United States lawyers in a court in New York pursuant to a United States statute").

Moreover, although the parties have submitted declarations regarding German privilege law, such law is beyond the scope of this Court's expertise and the purview of 28 U.S.C. § 1782. See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995).

### C. Applicable Law Governing Attorney-Client Privilege

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was

intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). This privilege extends "to communications between corporate counsel and a corporation's employees, made 'at the direction of corporate superiors in order to secure legal advice from counsel.'" In re Gen. Motors LLC Ignition Switch Litig., 80 F.Supp.3d 521, 527 (S.D.N.Y. 2015) (quoting Upjohn Co. v. United States, 449 U.S. 383, 394 (1981)). The attorney-client privilege, however, must be construed "narrowly because it renders relevant information undiscoverable," so this Court applies it "only where necessary to achieve its purpose." Erie, 473 F.3d at 418 (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).

Despite the narrow construction of the attorney-client privilege, it may also encompass fact investigations. The Supreme Court has noted that "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." Upjohn, 449 U.S. at 390-91; see also United States v. Rowe, 96 F.3d 1294, 1297 (9th Cir. 1996) (stating that Upjohn made "clear that fact-finding which pertains to legal advice counts as 'professional legal service'" (citing In re Woolworth Corp. Sec. Class Action Litig., No. 94-CIV-2217 (RO), 1996 WL 306576

10

(S.D.N.Y. June 7, 1996))). Thus, the Court observed: "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. Accordingly, this Court "consider[s] whether the predominant purpose of the communication is to render or solicit legal advice." Erie, 473 F.3d at 420.

        1.    Application of Attorney-Client Privilege

Applicants challenge that Jones Day did not represent Volkswagen for the purpose of providing legal advice. Applicants' selective reading of public statements does not change the fact that Jones Day was retained by Volkswagen to conduct a fact investigation for the purpose of facilitating legal advice.

The title (""Agreement on the commissioning of legal services between [Volkswagen] and Jones Day") and text of the retainer agreement establish that there was an attorney-client relationship between VW and Jones Day. (Perlitt Supp. Decl. ¶ 4.) While the retainer agreement states that Jones Day would clarify "facts" related to the emissions scandal, it also states that the firm would represent VW before United States authorities. (Id.) Moreover, the text of the retainer should be

read in conjunction with the tile of the agreement: while the excerpt does not specifically say that Jones Day would provide legal representation before U.S. authorities, it is obvious that such representation would be legal given the title of the agreement.

Statements by Jones Day attorneys make the existence of an attorney-client relationship clear. (See Perlitt Decl. ¶ 4; Romatowski Decl. ¶¶ 3-5 (explaining that Jones Day's "extensive investigation of the facts . . . was necessary, foremost among several purposes, to enable [it] to give sound and informed legal advice to [Volkswagen].").)

The Court next attempts to address whether attorney-client privilege applies to the document requests at issue here. In tension here are the fact that Applicants' request is beyond broad and that Jones Day's assertion of privilege is also all encompassing. Ordinarily, the party asserting privilege has the burden of proving that privilege. Erie, 473 F.3d at 419; Local Rule 26.2. However in this case, Applicants request practically a universe of documents, making it next to impossible for Jones Day to assert privilege with any particularity. At this time, it is impossible for the Court to determine whether particular communications are covered by attorney-client privilege. The Court does hold, however, that there is an attorney-client relationship between Volkswagen and Jones Day.

D. Applicable Law Regarding Work-Product Protection

In Hickman v. Taylor, 329 U.S. 495 (1947), the Supreme Court held that, under the work-product doctrine, written material and mental impressions prepared or formed by an attorney in the course of performing legal duties on behalf of a client are protected from discovery in the absence of undue prejudice or hardship to the party seeking discovery. Adopting this approach, Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless "they are otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed R. Civ. P 26(b)(3).

The Second Circuit has held that, to be protected work product, a document need not be prepared exclusively for the purpose of litigation:

> We hold that a document created because of anticipated litigation, which tends to reveal mental impressions, conclusions, opinions or theories concerning the litigation, does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in

13

> substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).

<u>United States v. Adlman</u>, 134 F.3d 1194, 1195 (2d Cir. 1998).

### 1. Application of Work-Product Doctrine

Volkswagen retained Jones Day in anticipation of proceedings before United States authorities. Accordingly, the work-product doctrine may be applicable here. However, as with attorney-client privilege, the document requests and the assertions of privilege are both overly broad. To the extent that documents requested contain the mental impressions of Jones Day attorneys, they would be covered by the work-product document. Jones Day will need to assert more specifically such protection upon a narrowing of the document requests.

Under Rule 26(b)(3), this is not the end of the inquiry. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter . . . ." Fed R. Civ. P 26(b)(1). Based on the discussion of privilege above, it is not clear that the requests covered by the work-product doctrine are "nonprivileged" and thus "otherwise discoverable under Rule 26(b)(1)." Fed R. Civ. P 26(b)(3). Moreover, in response to any assertion of work-product protection by Jones Day, Applicants will need to show their "substantial need for the materials to prepare [their] case and [that they] cannot, without undue

14

hardship, obtain [the documents'] substantial equivalent by other means." Id.

### E. Waiver of Privileges

Applicants argue that, even if the attorney-client privilege and work-product doctrine applied, Volkswagen and/or Jones Day waived those privileges through disclosure.

"Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears. . . . The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties." In re Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993).

The Second Circuit, however, has declined to adopt a "rigid rule" in "situations in which [a government agency] and the disclosing party have entered into an explicit agreement that the [agency] will maintain the confidentiality of the disclosed materials." Courts in this Circuit have varied in their approaches to such a situation and have held that waiver should be determined on a case-by-case basis. Compare Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc., No. 06 Civ. 5797 (PAC), 2010 WL 935317, at *2 (S.D.N.Y. Mar. 12, 2010); In re Nat. Gas Commodities Litig., 232 F.R.D. 208, 211 (S.D.N.Y. 2005); and In re Symbol Techs., Inc. Secs. Litig., 05-CV-3923, 2016 WL

15

8377036, at *15 (E.D.N.Y. Sept 30, 2016) with Alaska Electrical Pension Fund v. Bank of Am. Corp., 14-CV-7126 (JMF), 2017 WL 280816, at *3 (S.D.N.Y. Jan. 20, 2017); Gruss v. Swirn, No. 09 Civ. 6441 (PGG) (MHD), 2013 WL 3481350, at *13 (S.D.N.Y. July 10, 2013); S.E.C. v. Vitesse Semiconductor Corp., 771 F. Supp. 2d 310, 313-14 (S.D.N.Y. 2011); and In re Initial Pub. Offering Secs. Litig., 249 F.R.D. 457, 467 (S.D.N.Y. 2008).[8]

### 1.    Application of Waiver

Jones Day, in assisting Volkswagen's cooperation with authorities, entered into a non-waiver agreement regarding privileged documents. The agreement states that while Jones Day will provide oral briefings and additional documents in connection with its VW investigation, "to the extent any [privileged materials] are provided to DOJ pursuant to this agreement, VW does not intend to waive the protection of the attorney work product doctrine, attorney-client privilege, or any other privilege." (Romatowski Decl. Ex. A, at 1.)

---

[8] See also Fed. R. Evid. 502(a) ("when [a] disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.").

The Court here is swayed by the cases holding that disclosures made pursuant to non-waiver agreements do not waive the protections of the work-product doctrine or attorney-client privilege, recognizing, among other factors the "strong public interest in encouraging disclosure and cooperation with law enforcement agencies; [and that] violating a cooperating party's confidentiality expectations jeopardizes this public interest." Police & Fire Ret. Sys., 2010 WL 935317, at *2.

Applicants point to the provision stating that DOJ was to keep any privileged materials confidential "except to the extent that [it] determine[d] in its sole discretion that disclosure would be in furtherance of [its] discharge of its duties and responsibilities or is otherwise required by law." (Romatowski Decl. Ex. A, at 1-2.) That the DOJ has such discretion does not change the Court's determination. While the agreement gives DOJ discretion, that discretion is cabined by the requirement that any disclosure would be in furtherance of it duties or otherwise required by law. Furthermore, courts making a selective-waiver determination have still held that there was no waiver when nearly identical discretionary provisions were at issue. E.g., In re Symbol Techs., 2016 WL 8377036, at *14.

Applicants also contend that Jones Day has shared its work product with Deloitte, but Jones Day denies this claim, and

17

Applicants cannot adequately counter that denial. (Perlitt Supp. Decl. ¶ 6.)

Accordingly, the Court holds that, as set forth at this time, Jones Day has adequately asserted that the DOJ agreement did not waive any applicable privilege. However, to the extent that Applicants narrow their document requests, they may assert with greater specificity that privilege was waived with respect to particular documents.[9]

Because the documents requested by Applicants may be covered by either attorney-client privilege or the work-product doctrine or both, and because those privileges have not been waived, Applicants cannot meet the statutory requirements for 28 U.S.C. § 1782 at this time. The parties are advised to consult with one another to narrow the document requests and the assertions of privilege. They are advised to consult this Memorandum & Order as well as Local Rule 26.2 in narrowing the scope of issues in any future Applications.

Because the Court cannot sufficiently address the statutory requirements at this point, it need not address the discretionary factors under Intel Corp. v. Advanced Micro

---

[9] Because the Court holds that the document requests are too broad, it declines to address Applicants' request in their Sur-Reply to only encompass the Statement of Facts submitted to the Department of Justice at this time.

Devices, Inc., 542 U.S. 241 (2004).[10] However, in the background of the Court's analysis is its assessment that the document requests are unduly intrusive and burdensome. They are unduly intrusive in that they seek to obtain documents that potentially go to the core of Jones Day's legal representation of Volkswagen. Furthermore, the documents requests are both intrusive and burdensome in that they seek to shortcut any normal discovery process by simply relying on all of Jones Day's work. Lastly, the requests are burdensome in that they are beyond broad. While this Court is familiar with cases involving massive amounts of electronic discovery and recognizes that computer systems make it possible to sift through terabytes upon

---

[10] The Supreme Court held that even when an applicant meets the statutory requirements of § 1782, it has discretion in determining whether to grant the application. It set forth four factors relevant to that determination:
> (1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
> (2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
> (3) Whether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
> (4) Whether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel, 542 U.S. at 264-65).

terabytes of information, Jones Day should not have to do so here based on an overly broad subpoena.

## III. CONCLUSION

For the foregoing reasons, the Court both declines to grant the Application and DENIES Jones Day's Opposition to the Application. Should the parties narrow the document requests and the assertions of privilege, future Applications should be submitted to this Court pursuant to Local Rule for the Division of Business Among District Judges 3(b)(iv).[11] Cf. Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015).

SO ORDERED.

DATED:   New York, NY
         June 23, 2017

_Deborah A. Batts_
Deborah A. Batts
United States District Judge

---

[11] "When a modification or further action on a Part I determination is sought, it shall be referred in the first instance to the judge who made the original determination even though that judge is no longer sitting in Part I."